**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| HOLLY WOOD, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No.  2:04cv509-WHA |
| | ) | (WO) |
| RICHARD ALLEN,   Commissioner of the | ) | |
| Department of Corrections, TROY KING, | ) | |
| Attorney General for the State of Alabama, | ) | |
| | ) | |
| Respondents. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

**I. <u>INTRODUCTION</u>**

The Petitioner, Holly Wood, an Alabama inmate under sentence of death, filed a petition in this court for writ of habeas corpus under 28 U.S.C. §2254.   Initially, the court entered an order directing that this case should proceed in two stages, the first of which would be to determine which claims should be dismissed on procedural default grounds and which non-defaulted claims require an evidentiary hearing, and the second of which would be to determine the merits of the non-defaulted claims.  As a part of this process the court ordered counsel for the parties to file a Joint Report which states each claim raised in the petition using a mutually consensual numbering system, states each claim the state contends is procedurally defaulted and the grounds upon which the petitioner relies to overcome the procedural default, and states the parties' positions as to whether an evidentiary hearing is required and whether any discovery is required to develop the claim.

At a point after the Joint Report was filed, the court ordered briefing on the procedural

issues. The court then altered its procedures for disposition of death penalty cases and determined that this case should be briefed on the merits as well as on the procedural default issues. The case is now before the court on the issues of entitlement to an evidentiary hearing, procedural default issues, and the merits of the claims identified in the Joint Report.

## II.  FACTS AND PROCEDURAL HISTORY

The Petitioner, Wood, was tried in the Circuit Court of Pike Count, Alabama for capital murder of his former girlfriend, and was convicted on October 20, 1994.   The murder was charged as capital murder because Wood was found to have broken into the home of his former girlfriend, Ruby Gosha, with the intent to kill.  The evidence presented at trial was that Wood went inside the home and shot Ruby Gosha while she was asleep.

Following a sentencing hearing on October 21, 1994, the jury recommended, by a vote of ten to two, a sentence of death and the trial judge later sentenced Wood to death.  The Court of Criminal Appeals and the Alabama Supreme Court affirmed the conviction and death sentence. *Wood v. State*, 715 So. 2d 812 (Ala. Crim. App. 1996), *aff'd, Ex parte Wood*, 715 So. 2d 819 (Ala. 1998), *cert. denied*, __ U.S. __, 119 S. Ct. 594 (1998).

Wood filed a petition for relief from judgment pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. The Rule 32 court held an evidentiary hearing and denied the petition. The Rule 32 court did not allow testimony from an expert witness offered by Wood, a Dr. Faye Sultan, whom Wood offered as an expert psychologist.  The State had indicated in correspondence to the expert that she could be prosecuted for practicing psychology in Alabama without a licence.  On appeal, the Alabama Court of Criminal Appeals reversed the refusal to allow the expert testimony and remanded the case for the Rule 32 court to conduct an evidentiary

2

hearing and to make findings as to whether Wood was mentally retarded and as to whether his attorneys rendered ineffective assistance of counsel because they did not develop and present evidence that he is mentally retarded. *Wood v. State*, 891 So.2d 398 (Ala. Crim. App. 2003).

Upon remand from the Alabama Court of Criminal Appeals, the Rule 32 court held an evidentiary hearing. The expert witness originally offered by Wood, Dr. Sultan, did not appear at the hearing on the advice of her independent counsel. Another expert offered by Wood, however, Dr. Karen Salekin, testified that Wood is mentally retarded. Experts offered by the State, Dr. Harry McClaren and Dr. Gregory Prichard, came to the opposite conclusion. The Rule 32 court found that Wood is not mentally retarded, and rejected Wood's claims. This determination was affirmed on appeal. *Wood v. State*, 891 So.2d 398 (Ala. Crim. App. 2003).

### III. <u>STANDARD</u>

A district court must resolve all claims for relief raised in a petition for writ of habeas corpus whether habeas relief is granted or denied. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992), *cert. denied*, 513 U.S. 1162 (1995). A claim for relief is deemed to be any allegation of a constitutional violation. *Id.*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this court's review in this case. Under the AEDPA,

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254.

The United States Supreme Court has interpreted the provisions regarding a state court decision that is "contrary to" or an "unreasonable application of" clearly established federal law. *See Williams v. Taylor*, 529 U.S. 362 (2000). In *Williams*, the Court determined that under the "contrary to" clause, a federal habeas court may grant a writ of habeas corpus if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the Respondent court decides a case differently than the Supreme Court on a set of materially indistinguishable facts. *Id.* at 405. A state court decision is contrary to clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court precedent. *Id.; see also McIntyre v. Williams*, 216 F.3d 1254 (11th Cir. 2000). Under this standard, an unreasonable application is an objectively unreasonable application of the federal law set forth in decisions of the United States Supreme Court. *McIntyre*, 216 F.3d 1257.

## IV.  DISCUSSION

The court will address the issues pending before it in the following order:   Wood's entitlement to an evidentiary hearing on claims which are not defaulted, issues of procedural default, and the merits of claims which either are not defaulted or for which there is cause and

4

prejudice to excuse the default.

A.  Evidentiary Hearing Issues

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") set out the following standard for evidentiary hearings in death penalty cases.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--

(A) the claim relies on--

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254 (e)(2).

Wood seeks an evidentiary hearing on his claims of ineffective assistance of counsel at the penalty phase of his trial, his claim that he is mentally retarded and therefore ineligible for the death penalty, and his claim that his due process rights were violated by a threatened prosecution of his expert psychologist.[1]  The Respondents argue that Wood is not entitled to an evidentiary hearing on any of these claims because he has already received a full and fair hearing in the state courts, and that to the extent that he failed to develop the record in state court, he cannot do so

---

[1] The claims as identified in the Joint Report are A(1)(a), A(1)(b), A(1)(c), A(1)(d), A(1)(e), A(1)(f), A(1)(g), A(1)(h), A(2), A(3), A(4), A(5), D(3), and F.  Wood contends that all of the claims in A are one ineffective assistance of counsel at the penalty phase claim for which he is due an evidentiary hearing.  The court will address the ineffective assistance of counsel at the penalty phase claims as one for purposes of the evidentiary hearing inquiry.

now.

Failure to develop the factual basis of a claim has been interpreted to mean that a petitioner did not fail to develop the factual basis of a claim if he was diligent in his efforts to do so. *Williams v. Taylor*, 529 U.S. 420, 435 (2000). Diligence means that he made a reasonable attempt in light of the information available at the time. *Id.* A petitioner does not fail to develop the factual basis of his claim when his diligent efforts are thwarted by another. *Id.*

It is clear from the record in this case that Dr. Sultan, an expert initially offered by Wood at the Rule 32 hearing, was precluded by the state from testifying. The Alabama Court of Criminal Appeals, however, reversed the exclusion of the testimony. The court stated that the "circuit court erred when it refused to allow Dr. Sultan to testify as an expert in this case on the grounds that she was not licensed to practice psychology in Alabama and that practicing psychology in Alabama without a license is a misdemeanor." *Wood v. State*, 891 So.2d 398, 410 (Ala. Crim. App. 2003). As will be discussed at greater length below, although authorized to do so, Dr. Sultan did not testify on remand to the Rule 32 court. Putting aside the question of whether Dr. Sultan's refusal is sufficient to support Wood's claim of diligence, this court cannot conclude that Wood has otherwise established that he is entitled to an evidentiary hearing before this court.

Dr. Karen Salekin was called by Wood at the Rule 32 evidentiary hearing and testified during that hearing. During the Rule 32 hearing, Dr. Salekin was asked what she was asked to do as part of her retention as an expert in the case. Dr. Salekin answered that she "was asked to do an evaluation of mental retardation for Mr. Wood, look at adaptive functioning and intellectual functioning." Vol. 28 at page 80. Dr. Salekin testified at the Rule 32 hearing that she reached an

6

opinion on the issue of whether Wood was mentally retarded and concluded that "he falls within the mild mental retardation range, which is two domains of adaptive functioning having deficits and an IQ below 70 and above 50 to 55." *Id.* at page 104. Therefore, expert testimony regarding mental retardation was presented by Wood at the Rule 32 hearing, and is currently in the record for this court's consideration.

The court does not have any report by Dr. Sultan before it. The court's only knowledge of what Dr. Sultan would have added to the Rule 32 proceedings is Wood's representation in his brief that "evidence that was readily available to Wood's counsel should have put them on notice that Wood had . . . a childhood that was marred by poverty, abuse, and alcoholism." Petitioner's Response Brief Addressing Stage I Arguments at page 21. There is no evidence before the court that Dr. Sultan was prepared to offer an opinion regarding whether Wood is mentally retarded.

The Respondents have pointed out that the Eleventh Circuit has affirmed a determination of the district court that a ruling could be based on the record alone where the petitioner did not suggest that evidence from the witness could add anything to the record which would be non-cumulative. *Young v. Zant*, 727 F.2d 1489, 1492 (11th Cir. 1984). In this case, while Wood has argued that Dr. Sultan's testimony would have added to his claim, at least with respect to the mental retardation claims, he has not demonstrated that any determination by Dr. Sultan as to Wood's status would not be cumulative of Dr. Salekin's expert opinion that Wood is mentally retarded. Accordingly, even if an evidentiary hearing is not barred by AEDPA as to the mental retardation claims, no hearing is required in this court. To the extent that it would be within this court's discretion to conduct an evidentiary hearing on the mental retardation claim, the court

will not do so, since there has been no showing that the evidence presented would add to the court's inquiry, rather than merely being cumulative of Dr. Salekin's determination.

Wood also argues that because the testimony that Dr. Sultan was prepared to give at the hearing covered areas about which Dr. Salekin was not prepared to testify, Wood could not fully present evidence in support of his ineffective assistance of counsel and mental retardation claims. The purpose of hiring Dr. Sultan was, according to Wood, to have her evaluate Wood and to provide a clinical diagnosis and testimony based on her evaluation. Petitioner's Response Brief Addressing Stage I Arguments at page 3. The testimony pointed to by Wood which would have been offered by Dr. Sultan, and not Dr. Salekin, is evidence regarding Wood's special education background, physical mental and emotional abuse, and the extreme poverty in which he was raised. This evidence, therefore, presents an issue of diligence which is separate from expert opinion regarding mental retardation. That is, the evidence of his poverty, violence and physical abuse, exposure to alcohol and Petitioner's having Fetal Alcohol Syndrome, childhood traumatic experience with death, his educational background and school experiences, and Wood's relationship with his son are matters separate from mental retardation.

In *McNair v. Campbell*, 416 F.3d 1291 (11th Cir. 2005), the Eleventh Circuit reviewed a decision to hold an evidentiary hearing. The court recognized that a Rule 32 court's ruling impeded the presentation of expert testimony, but concluded that the factual predicate of an ineffective assistance of counsel claim could have been established in other ways. *Id.* at 1300. The court reasoned that the petitioner could have testified himself at the Rule 32 hearing, or had family members testify, about his drug abuse, and could have adduced evidence about the effects of drug addiction from treatises. *Id.* The Eleventh Circuit concluded that this factor, along with

8

counsel's untimely filing of motions and failure to present the issue of the denial of those motions to the Alabama Court of Criminal appeals, "[t]aken cumulatively, . . . demonstrate that [the petitioner] was not diligent." *Id.* at 1300. The court's conclusion, therefore, was that the petitioner may have been prevented from obtaining expert testimony, but his failure to seek that testimony in a timely manner or to raise that issue on appeal, and his failure to present any other evidence in support of that claim meant that his actions were not diligent.

Evidence regarding poverty, abuse, exposure to alcohol, traumatic experience with death, education, and Wood's relationship with his son could have been, and to at least some extent was, however, presented at the initial Rule 32 hearing on September 22, 2001, and at the hearing on remand from the Alabama Court of Criminal Appeals, despite any limitation in the remand order to issues of mental retardation. Alfreida Griffen, who knew Wood during childhood testified about Wood's experiences in special education. Vol. 16 at pages 132-133. Maeola Wood, Wood's sister, also testified about the children's living conditions while growing up, about the death of Wood's mother and brother, and about Wood's young son. *Id.* at pages 152-60, 164, 166-67, 196. Janet Penn, Wood's special education teacher, also testified at the initial Rule 32 hearing. *Id.* at pages 209-15. Johnnie Pearl also testified during the Rule 32 hearing about Wood's relationship with his son. Vol. 17 at page 120. In her testimony, Dr. Salekin testified about her interview with Wood's sisters, Johnnie Pearl and Maeola, and her interview with Charles Sport, principal of Wood's school. Vol. 28 at pages 86-87.

All three of the factors relied on in *McNair* in determining that there was no entitlement to an evidentiary hearing may not be present in this case, but this court draws from the determination in *McNair* that merely because expert testimony is precluded does not mean that

9

the petitioner satisfies the diligence standard, if evidence to support the claim could have been presented by other means.  In this case, if Wood wanted to put on additional testimony about his poverty, violence and physical abuse, exposure to alcohol, childhood traumatic experience with death, educational background and school experiences, and the relationship with his son, that evidence could have been developed through the witnesses who were called at the initial Rule 32 hearing, and other witnesses besides Dr. Sultan.  Wood also could have explained the effects of such factual evidence through a mechanism other than an expert witness.  *McNair,* 416 F.3d at 1300. Wood has not demonstrated that Dr. Sultan's expert testimony was needed on these points. Under *McNair*, therefore, the court cannot conclude that Wood has made an adequate showing as to diligence with respect to this evidence.

Alternatively, the court cannot conclude that Wood has demonstrated that Dr. Sultan's testimony would be "non-cumulative."  As stated earlier, the court does not have any report by Dr. Sultan before it.  The court's only knowledge of what Dr. Sultan would have added to the Rule 32 proceedings is Wood's representation in his brief that "evidence that was readily available to Wood's counsel should have put them on notice that Wood had  . . . a childhood that was marred by poverty, abuse, and alcoholism."  Petitioner's Response Brief Addressing Stage I Arguments at page 21.  Whether or not evidence should have put counsel on notice does not appear to be the proper subject of testimony by a psychologist.  The court does not know what Dr. Sultan's opinion would have been.  To the extent that Dr. Sultan's testimony would have been that Wood in fact had a childhood in which he experienced poverty, abuse, and alcoholism, that testimony would have been cumulative to factual testimony on those points which was presented.

10

Wood has also argued that he was precluded from presenting evidence to support his due process claim.  He states that if Dr. Sultan had testified, she would have testified that it was the actions of the state which prevented her from testifying at the Rule 32 hearing.  Wood's argument is that Dr. Sultan's testimony was needed during the Rule 32 hearing to establish that the reason that she did not testify at that hearing was due to actions by the Respondent.  The court concludes that Dr. Sultan's testimony would be cumulative of the evidentiary exhibits in the record documenting Petitioner's counsel's attempts to receive assurances that Dr. Sultan would not be prosecuted, so that Wood is not entitled to an evidentiary hearing on this claim.     Again, to the extent that it would be within this court's discretion to conduct a hearing on these claims, the court will not do so because there has been no showing that the evidence presented would add to the court's inquiry, rather than merely being cumulative of evidence already in the record.

### B.  Procedural Default Issues

Unless a habeas petitioner shows "cause and prejudice," a court may not reach the merits of new claims not previously raised, or procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims. *See Sawyer v. Whitley*, 505 U.S. 333, 338 (1992).

The Respondents have asserted that several of Wood's claims are subject to procedural default, including the following claims: ineffective assistance of counsel claim that Wood's trial counsel were per se ineffective based on inexperience and the circumstances of the appointment of counsel, a claim that the state courts failed to apply the appropriate mental retardation standard, a claim that the mental retardation standard applied would result in the execution of the mentally retarded, a claim that the jury should decided the mental retardation question, a claim of

11

prosecutorial misconduct for improperly addressing the question of punishment during the guilt phase, a claim of prosecutorial misconduct for improperly arguing facts not in evidence, a claim that Alabama's burglary statute is unconstitutionally arbitrary and vague, a *Brady* claim, a claim that the state's notice of intent to rely on an aggravating circumstance was unconstitutionally inadequate, a claim based on the failure to remove jurors for cause, a claim that the jury failed to truthfully answer voir dire questions, and a claim that the sentence was imposed in a racially discriminatory manner. The court will address each of these claims in turn.[2]

### 1. Per Se Ineffective Assistance of Counsel

Wood has argued that his claim in Claim B of the Joint Report that counsel was per se ineffective based on lack of experience is not procedurally defaulted because in his state Rule 32 petition he alleged that he received ineffective assistance of counsel during the penalty phase, and because, during the evidentiary hearings, he introduced evidence that the trial counsel who had handled the penalty phase of the trial, Kenneth Trotter, had been practicing law for less than one year at the time he represented Wood, and that he did not properly prepare for the penalty phase. Wood also states that he included Claim B in his post-hearing brief filed with the Circuit Court and the state did not object to his amending the Rule 32 petition to conform to the evidence.[3]

---

[2] For purposes of organization of the discussion, the court has chronologically numbered each of the claims discussed, but for identification purposes also refers to the claims by the letter assigned them in the Joint Report.

[3] Originally, the Respondent contended that this court is without jurisdiction to decide Wood's claim because it raises an issue of state, not federal law. Wood responds that the reference to Alabama's statute which requires counsel appointed in capital cases to have five years experience in criminal law does not make the claim a state law claim. In its Reply, the Respondent withdrew this contention. *See* Doc. #46 at pge 27 n.4.

The Respondents argue that Wood raised this claim for the first time in the post-hearing brief he filed in the Rule 32 court.  The Alabama Court of Criminal appeals held that the claim was not timely raised, stating that the claim was not presented in any of the petitions or during the Rule 32 hearing, but was only raised in the post-hearing brief. *Wood*, 891 So. 2d at 414.

The Respondents cite to a decision from the Alabama Court of Criminal Appeals holding that a Rule 32 petitioner may not raise a claim for the first time in his Rule 32 post-hearing brief. *See McGahee v. State*, 885 So. 2d 191, 192 (Ala. Crim. App. 2003).

Wood argues that the claim was not merely stated in the brief, but that he attempted to amend his petition to include this claim and that the State did not object to its inclusion.  On page 1 of his 157 page brief filed in support of the Rule 32 Petition, Wood states that to the extent that the court considers anything within the brief to be outside of the petition, "we hereby seek leave to amend the petition to conform to the evidence . . . ."  Vol. 23 at page 1.  The brief was entered on the court's docket as a brief, with no notation of a pending motion, and the next entry is for the Final Order by the court.  *Id.* at page 1229.  There is no indication that the statement within the brief was construed as a motion, or that Wood was given leave to amend his petition.  Therefore, the court cannot conclude that the state courts' determination that the claim was not raised in the Rule 32 was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  The court concludes, therefore, that the claim is procedurally defaulted and no cause and prejudice have been established to excuse the default.

2.      Claims That the Pike County Circuit Court applied an Incorrect Standard of Review

The Respondents also argue that claims D(1) and D(2) identified in the Joint Report are

procedurally defaulted.  The Respondents contend that claim D(1) of the Joint Report, wherein Wood argues that the Pike County Circuit Court did not apply the standard of review required by the Supreme Court of Alabama when it reviewed and rejected his claim that mental retardation renders him ineligible for the death penalty, raises an issue of state law and, therefore, cannot be reviewed by this court. Wood argues in response that the state court's failure to follow the Alabama Supreme Court's standard for mental retardation was a violation of his Fourteenth Amendment due process rights, because he had an interest in his expectation that the Respondent court would apply the standard determined by the Alabama Supreme Court to be controlling.

This court agrees that insofar as Wood is challenging the fact that the standard was not applied as being a due process violation, he has alleged a violation of federal, not state, law.

Wood also argues that the circuit court misapplied the applicable standard by looking at strengths, rather than deficits, in adaptive functioning.  Wood argues that there is no rule of Alabama procedure that would, or could, have required him to raise the claims in D(1) and (2) because he could not have been expected to object to the circuit court's misapplication of the mental retardation standard before the order was issued.  Wood argues that federal courts do not have to honor state procedural bars in cases where the default is premised on a failure to assert a claim based on judicial error prior to the occurrence of that error.

The Respondents contend that when the case was remanded from the Court of Criminal Appeals to the Rule 32 court for a hearing on the mental retardation issue, Wood could have requested a ruling at that point from the Rule 32 court on the standard which would be applied. Without some showing that Wood should have had reason to think that the Rule 32 court was going to apply a standard other than that mandated by the Alabama Supreme Court, however, it

14

would seem that there would have been no reason for Wood to request such a determination

ahead of time.  *Cf. Cola v. Reardon*, 787 F.2d 681, 694 (1st Cir.) ("to require defendants to

object to appellate tribunal errors prior to the appellate opinion itself is, in our view, to impose

unreasonable demands of foresight."), *cert. denied*, 479 U.S. 930 (1986).

There is a complicating factor in this analysis.  The Alabama Court of Criminal Appeals

in reviewing Wood's collateral appeal determined that these claims were not presented to the

circuit court and, therefore, the claims were not properly before the circuit court. *Wood*, 891 So.

2d 413.

In *Harris v. Reed*, 489 U.S. 255, 261 (1989), the Supreme Court applied the *Michigan v.

Long*, 463 U.S. 1032 (1983), plain statement rule, and held that if a state court issues a plain

statement that its decision rests on independent and adequate state grounds, a federal court

should not address the merits of the federal claim.

In this case, however, Wood contends that a rule that a claim based on a court's ruling

must be advanced before the ruling is issued or else it will be procedurally barred is a new rule

not previously applied.  Only a firmly established and regularly followed state practice may bar

subsequent review in federal court. *Ford v. Georgia*, 498 U.S. 411, 423-23 (1991).  This court

agrees and, therefore, the court concludes that claims D(1) and D(2) are not procedurally

defaulted and may be addressed on the merits.

3.      Violation of Sixth Amendment Right to Trial By Jury

The Respondent argues that Claim G, that Wood's Sixth Amendment right to trial by jury

was violated when the Pike County Circuit Court, rather than a jury, determined that he was not

mentally retarded, is procedurally defaulted because it could have been raised during the Rule 32

15

proceedings.  As with claims discussed above, the Alabama Court of Criminal Appeals determined that this claim was not properly raised before it because it had not been raised before the Rule 32 court. .

Wood argues that the claim could not have been raised before the Rule 32 court on remand because the Court of Criminal Appeals narrowly defined the issues to be presented on remand, and this claim was not one of those issues.  Wood contends that a state rule that a Rule 32 petitioner is required to raise claims outside of the scope of review as defined by the appeals court is not firmly established and regularly followed law.

The court need not reach the procedural default issues as to this claim, however, because the claim itself is without merit, as is discussed below.

4.  Prosecutorial Misconduct

In Claim J, Wood has raised several instances of prosecutorial misconduct.  The Respondents have contended that two of Woods' claims of prosecutorial misconduct are procedurally defaulted; namely, J(1)(b) that the prosecutor improperly addressed the question of punishment during the guilt phased on the trial and J(1)(d) that the prosecutor argued facts not in evidence.  The Respondents further contend that one of those claims raises only an issue of state, rather than federal, law.  Wood argues that the claims ought not to be separated out, but should be treated as one claim of prosecutorial misconduct and further, that that claim is not procedurally barred.

Only aspects of prosecutorial misconduct which were fairly presented to the Respondent court may be considered as claims in a federal habeas corpus proceeding.  Those aspects of alleged prosecutorial misconduct which have been identified as separate claims, J(1)(b) and

16

J(1)(d), were not fairly presented to the state courts, are procedurally defaulted, and no cause and prejudice have been established to excuse the default.

    5.  Burglary Statute is Unconstitutionally Vague

    In Claim K, Wood has asserted that the burglary statute pursuant to which Wood was charged with capital murder is arbitrary and vague and fails to channel the discretion of law enforcement and juries.  The Respondents contend that this claim is procedurally defaulted because it was not raised at trial or on direct appeal.

    Wood argues that he can demonstrate cause and prejudice with respect to Claim K because it was a meritorious claim that a competent attorney would have raised on direct appeal, so that ineffective assistance of counsel provides cause and prejudice to excuse the procedural default.  Wood has not responded, however, to the assertion that the claim is procedurally barred because it was not raised at trial.  Claim K is, therefore, procedurally barred.

    6.  *Brady* claim

    Claim L is a claim asserted under *Brady v. Maryland*, 373 U.S. 83 (1963).  Wood alleges that he was not advised that Calvin Salter, a witness who testified for the prosecution at Wood's trial, was being prosecuted for assault at the time. The Respondents contend that this claim was procedurally defaulted because it was not raised at trial or on appeal.

    Wood responds that this claim was unambiguously raised on direct appeal and was reviewed on direct appeal, and so was not procedurally defaulted.  In the Joint Report filed in this case, however, Wood took the position that this claim was procedurally defaulted and that cause and prejudice existed to excuse the default.  *See* Joint Report (Doc. #36) at page 75. Furthermore, although Wood purports to cite to a portion of his appellate brief in which he raised

17

this claim on direct appeal, upon review of his direct appeal brief  there is no mention of a failure to disclose Calvin Salter's prosecution within the pages cited by Wood, or anywhere else in the direct appeal brief.  Vol. 13, Direct Appeal Brief, pages 1-33.  While the Respondents have pointed out that, in the brief in support of a petition for writ of certiorari to the Alabama Supreme Court, Wood argued that information had been withheld by the state, even in that brief the information identified is evidence of intoxication and mental illness, not Calvin Salter's prosecution.  Vol. 14, Brief in Support of petition for Writ of Certiorari, page 29.   Therefore, the court concludes that this claim is procedurally barred.

     7.  Due Process Violation

     In Claim M, Wood alleges that his due process rights were violated because he was not given adequate notice of the prosecution's intent to prove a fourth aggravating circumstance. The Respondents contend that this claim is procedurally defaulted because it was not raised on direct appeal.[4]

     Wood argues that he has cause and prejudice to excuse his procedural default on this claim, but only states that his counsel were ineffective, which prejudiced him.  This showing is not sufficient. In order demonstrate cause and prejudice based on a claim of ineffective assistance, a petitioner must show that counsel's performance was so ineffective as to violate the federal constitution. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  In other words, a petitioner seeking to show ineffective assistance as the cause of a default must prove that his counsel was ineffective under the standard set forth in *Strickland v. Washington*, 466 U.S. 684

---

[4] The Respondents have withdrawn the assertion that Claim M is only an issue of state law.

(1984).  Wood's conclusory statement that counsel was ineffective is not sufficient.

    8.  Violation of Right to Impartial Jury by Refusal to Remove Jurors for Cause

    In Claim N, Wood has raised a claim that his right to an impartial jury was violated by the trial court's refusal to remove jurors for cause, which the Respondents state is procedurally defaulted because it was not raised on direct appeal.  Wood does not dispute the assertion of procedural default, but argues that he can establish cause and prejudice to excuse the default because his counsel were constitutionally ineffective.  For the reasons discussed above, this conclusory assertion is not sufficient to excuse the default.

    9.  Violation of Right to Impartial Jury by Failure of Juror to Truthfully Answer Questions and Racially Discriminatory Imposition of Death Sentence

    Claim O asserts a violation of Wood's constitutional rights on the basis that he was denied his right to exercise peremptory strikes, to challenge jurors for cause, and that he was denied his right to a fair trial because a juror failed to truthfully answer voir dire questions. Claim P alleges that Wood's death sentence is unconstitutional because it was imposed in a racially discriminatory manner.  Wood has claimed that he has established cause and prejudice to excuse the procedural default of both of these claims.  Again, as was discussed earlier with respect to other defaulted claims, Wood cannot discharge his burden to establish cause and prejudice by merely stating in a conclusory fashion that his counsel was ineffective.  Furthermore, with respect to claims O and P, the Respondents argue that the claims are procedurally defaulted because they could have been, but were not, raised at trial or on direct appeal.  Wood claims that there is cause for the procedural default on this claim based solely on the failure to raise the claims on direct appeal and establishes no cause for the failure to raise the claims at trial.

19

Therefore, these claims are procedurally barred.

C.  Merits Issues

The court will now address the issues argued in the parties' briefs.

1.  Constitutional Violations Resulting from Determination that Wood is Not Mentally Retarded

Wood has argued that the state courts' adjudication of his claim that his execution would violate the Fifth, Eighth and Fourteenth Amendments because he is mentally retarded was an unreasonable application of *Atkins v. Virginia* and an unreasonable determination of the facts.

In *Atkins v. Virgina*, 536 U.S. 304 (2002), the Supreme Court held that the Eighth Amendment prohibits the execution of persons who are mentally retarded.  The Court held that it is up to the states to develop "appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." *Atkins*, 536 U.S. at 317.

The Alabama Court of Criminal Appeals has recently summarized the law of Alabama in this area as follows:

> Our Legislature has not established a method for deciding whether a capital defendant is mentally retarded as contemplated by Atkins and therefore not eligible for the death penalty. At most, Alabama has the "Retarded Defendant Act," § 15-24-1 et seq., *Ala.Code* 1975. Section 15-24-2(3), *Ala.Code* 1975, defines a mentally retarded person, for purposes of the Act, as "[a] person with significant subaverage general intellectual functioning resulting in or associated with concurrent impairments in adaptive behavior and manifested during the developmental period, as measured by appropriate standardized testing instruments." Finally, in *Ex parte Perkins*, 851 So.2d 453, 456 (Ala.2002), the Alabama Supreme Court held:
> "[A] defendant, to be considered mentally retarded, must have significantly subaverage intellectual functioning (an IQ of 70 or below), and significant or substantial deficits in adaptive behavior. Additionally, these problems must have manifested themselves during the developmental period (i.e., before the defendant reached age 18) ."

20

*Smith v. Alabama*, No. CR-97-1258, WL 2788994, *4 -5  (Ala. Crim. App. Sept. 29, 2006).

It is, therefore, within the context of this definition by the State of Alabama, and the definition applied in *Atkins*, that the court evaluates Wood's claims.

Wood contends that it is uncontested that his i.q. is below 70 and that he has significant limitations in one area of adaptive functioning–functional academics, and that these deficits manifested prior to the age of eighteen.  Wood contends that the only issue, therefore, is whether he has at least one more limitation in adaptive functioning.  Wood says that the evidence shows that  he has significant limitations in the areas of communication, social skills, and self-direction and that the state courts' determination ignored evidence of his limitations and focused on evidence of his strengths.

For the reasons discussed above, the court finds itself constrained by the record in this case not to hold an evidentiary hearing on the issue of mental retardation.  The court has thoroughly reviewed the record evidence of mental retardation which was presented to the state courts during the Rule 32 hearing, and particularly the evidence presented upon remand from the Alabama Court of Criminal Appeals, in evaluating the reasonableness of the state courts' determination of Wood's claims.

The Rule 32 court stated that Wood had probably established that his intellectual functioning fell within the mild mental retardation range.  Vol. 41 at page 2403.  This finding is supported by the record.  There is also evidence in the record that Wood's functional academics area of functioning was substantially limited.  Vol. 28 at page 186.

Dr. Karen Salekin testified on behalf of Wood at the Rule 32 hearing that Wood suffered deficits in more than one area of adaptive functioning.  The Rule 32 court determined that Dr.

Salekin's opinion regarding Wood's adaptive functioning was not to be credited because it was based on information obtained from Johnnie Pearl Wood, his sister, which would indicate that Wood was functioning at the level of a five or six year old.  Vol. 41 page 2404, 2407.

The Rule 32 court found credible the testimony of Dr. Harry A. McClaren and Dr. Gregory A. Prichard, who based their opinions on the administration of tests to several persons, and who concluded that Wood does not have substantial deficits in his adaptive functioning. *Id.* at 2407-09.  Dr. McClaren testified that the "totality of the evidence was that the adaptive behavior measures did not support that his adaptive behavior caused two of the areas to fall so low as to justify a diagnosis of mental retardation." Vol. 28 at page 189. When asked to clarify what would be "so low,", he explained that he meant "two standing deviation median." *Id.*   The Rule 32 court also highlighted aspects of the testimony regarding Wood's adaptive functioning. Wood argues that the Rule 32 court wrongly focused on his abilities and ignored evidence of his deficiencies.

Wood points to the following as evidence of deficiencies in his adaptive skill areas: the Vineland questionnaire completed by Wood's former girlfriend, Barbara Siler, which he says showed that he had deficits in the areas of communication and socialization; the Vineland questionnaire completed by Wood's former teacher, Hilda Maddox, which he says showed he had deficits in communication and socialization; the responses to the Vineland questionnaire completed by Wood's former school teacher, Janet Penn, which he says showed he had limitations in the area of communication; the responses to the SIB-R completed by a corrections officer, which he says showed he had limitations in seven areas; testimony of Wood's trial counsel that he was passive and non-communicative during the trial; and Dr. Salekin's testimony

22

that Wood's encounter with a detective showed he had impaired judgment and was not acting rationally. The results of the Vineland and the SIB-R tests pointed to by Woods, however, were administered by the professionals who testified on behalf of the State.

The Rule 32 court rejected the only expert testimony that Wood is mentally retarded as being incredible because it was based on information which was inconsistent with his actual functioning in the community.  Vol. 41 at page 2407.  Wood argues that this court should reject as unreasonable the Rule 32 court's reliance on expert testimony that he is not mentally retarded, but also seeks to rely on evidence from tests upon which those experts based their opinion.  See Petitioner's Reply Brief at page 34.

To rely on Dr. Salekin's opinion that Wood is mentally retarded would be, according to the evidence in the record, to accept that Wood was functioning as a five or six year old.  It was not inappropriate for the state courts to point to evidence of Wood's abilities to drive a fork lift, to manage money, to maintain a relationship with his girlfriend, and other similar evidence, to conclude that Dr. Salekin's opinion was not based on reliable evidence.  Furthermore, the state courts did not fail to properly consider areas of limitation, but instead found credible expert opinion which concluded, as stated above, that the "totality of the evidence was that the adaptive behavior measures did not support that his adaptive behavior caused two of the areas to fall so low as to justify a diagnosis of mental retardation."  Vol. 28 at page 189.  Therefore, this court cannot conclude that the state courts' decision was an unreasonable application of federal law, or based on an unreasonable determination of the facts.

Wood raises additional claims, which this court has concluded are not procedurally defaulted, that the State courts failed to adopt the Alabama Supreme Court's definition of mental

retardation in violation of his due process rights, and that the standard adopted by the State court

would allow for the execution of mentally retarded Defendants.  The basis of Wood's arguments

is that the state courts focused on Wood's strengths and ignored evidence of his deficits in

adaptive behavior.  Wood states that the state court adopted a broader test which did not evaluate

the adaptive functioning prongs of the American Association on Mental Retardation or the

American Psychiatric Association's definitions of mental retardation referred to in *Atkins*.[5]

     As stated above, Dr. McClaren offered his opinion as to Wood's adaptive functioning in

terms of whether his functioning was low in two areas.  Vol. 28 at page 189.  This was consistent

with the approach outlined in *Atkins*.  Also as stated above, making findings as to Wood's

---

[5]  The Court set out the following definitions:

The American Association on Mental Retardation (AAMR) defines mental retardation as follows: " Mental retardation refers to substantial limitations in present functioning. It is characterized by significantly subaverage intellectual functioning, existing concurrently with related limitations in two or more of the following applicable adaptive skill areas: communication, self-care, home living, social skills, community use, self-direction, health and safety, functional academics, leisure, and work. Mental retardation manifests before age 18." Mental Retardation: Definition, Classification, and Systems of Supports 5 (9th ed.1992).

The American Psychiatric Association's definition is similar: "The essential feature of Mental Retardation is significantly subaverage general intellectual functioning (Criterion A) that is accompanied by significant limitations in adaptive functioning in at least two of the following skill areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety (Criterion B). The onset must occur before age 18 years (Criterion C). Mental Retardation has many different etiologies and may be seen as a final common pathway of various pathological processes that affect the functioning of the central nervous system." Diagnostic and Statistical Manual of Mental Disorders 41 (4th ed.2000). "Mild" mental retardation is typically used to describe people with an IQ level of 50-55 to approximately 70. *Id.*, at 42-43.

*Atkins*, 536 U.S. 309 n.3.

strengths was not inappropriate, given the expert testimony offered by Wood which was based on testing which would have been inconsistent with those strengths. Therefore, the court determines that the state courts' decision is not an unreasonable application of federal law.

As referenced above, in claim G, Wood has advanced a claim based on an alleged Sixth Amendment violation because the determination that he is not mentally retarded was made by the Rule 32 court rather than a jury. The Fifth Circuit has determined that "because *Apprendi* does not apply retroactively . . . and *Ring*, even if retroactive, does not render the absence of mental retardation an element of the sentence that is constitutionally required to be determined by a jury," there is no showing of a constitutional violation." *United States v. Webster*, 392 F.3d 787, 792 (5th Cir. 2004). The court agrees and, therefore, finds that Wood is not entitled to relief on this claim.

2. Claims Arising From July Selection

a. In Claim H of the Joint Report, Wood has claimed that the state courts' conclusion that the prosecutor in his trial did not violate the Fourteenth Amendment by striking potential jurors was unreasonable in light of the facts, and that the decision was contrary to established Supreme Court precedent.

Under *Batson v. Kentucky*, 476 U.S. 79, 97 (1986), a defendant must make a prima facie case of racial discrimination in jury selection and then the burden shifts to the state to come forward with a race-neutral explanation for challenging black jurors. Wood argues that at least eight times, the State's proferred reason for striking black prospective jurors in his case also applied to white prospective jurors who ultimately sat on the jury and, therefore, were a pretext for discrimination.

Wood relies on the following analysis by the Supreme Court in *Miller-El v. Dretke*, _ U.S. _, 125, S.Ct. 2317, 2325 (2005): "If a prosecutor's proferred reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination."

Wood states that the State offered as the reason for striking black prospective jurors, for example Christine B. Jones, that the prospective jurors said they did not believe in an eye for an eye, or in capital punishment, *see* Vol. 2 page 362, but did not strike other white prospective jurors who also said they did not believe in an eye for an eye.

In *Hightower v. Terry*, 459 F.3d 1067 (11th Cir. 2006), the Eleventh Circuit considered a case in which a petitioner argued, under *Miller-El*, that race-neutral explanations were evidence of discrimination when similarly situated white persons were not stricken for cause. The Eleventh Circuit, however, stated that the comparison between the prosecutor's handling of white and black jurors was not briefed before the Georgia Supreme Court on appeal in the state courts. The court concluded, therefore, that because the claim was not properly raised in the state courts, and no claim for ineffective assistance of counsel for failing to advance the comparison was raised in federal court, the petitioner was not entitled to relief on the *Batson* claim. *Id.* at 1071-72. What the Eleventh Circuit held, therefore, is that within a *Batson* claim, there may be theories not presented in state court which are themselves procedurally barred. It is with that understanding that the court approaches Wood's *Batson* claim here.

The State court opinion in this case concluded that the prosecutor's explanation was race-neutral. *Wood*, 715 So. 2d at 815. Wood's appellate brief filed in state court identified several jurors as having been struck because they were opposed to the death penalty and did not believe

in an eye for an eye. Vol. 13, page 20.  He argued that the reasons were not adequate because just being opposed to capital punishment does not disqualify one from sitting on a capital case. *Id.* at page 21.  This court has been pointed to no argument, however, that similar opinions were expressed by white jurors who were not struck.

Under *Hightower*, the court must conclude that Wood's argument before this court that racial discrimination should have been inferred based on a comparison with the treatment of white prospective jurors is procedurally barred in this case.

Wood also identifies another reason for strikes by the prosecutor that was common to several jurors. Wood points to Azaline Brooks as having been struck because she had a nephew in prison, a sister who was a defendant in a criminal case, she wanted off duty because of a dental appointment, and she touched the defendant on the arm on the way to pick up the jury questionnaire.   Wood also points to Stevie Scott, whom the prosecutor said he struck as being related to a drug defendant and who himself had contact with the police department under suspicious circumstances.  Vol. 2 at 364.  Wood says that the trial court ruled that suspicious circumstances contact is not a race neutral reason and that the only remaining reason was being related to a drug defendant.  George Bowens was a prospective juror whom the prosecution said was struck because he was a student and wanted to be excused, he seemed to have trouble with the idea of rehabilitation in prison, and he seemed to be irritated with the clerk of the court. *Id.* at 360.  Marcus L. Thomas had relatives who had been prosecuted, he did not want to serve because he was a student, his brother had been prosecuted by the prosecution's office and was serving time.  The prosecution said it struck Alvin Rodgers because he had a brother who was a child support defendant and he said on his questionnaire that under no circumstances would he vote for

the death penalty. *Id.* at 363. Stanley Scott was struck because he had been prosecuted by the prosecutor's office for a bad check, he was emphatic in his response that he did not believe in an eye for an eye, and a family member had been caught stealing. *Id.* at 363-64.

Wood argues that the failure to question the panelists about the reasons the prosecutor gave for striking them is evidence suggesting that the explanation is a sham, citing *Miller-El*, 125 S. Ct. at 2329. Wood also points to Frank Paul, a white person on the jury panel, who had an aunt convicted of manslaughter and who was working out of town in North Carolina, although his permanent residence was still in the Troy area, and he said that serving on the jury would pose a hardship. Vol. 1 at 111. Finally, Wood says that the Pike County District Attorney had demonstrated a pattern and practice of striking black citizens from juries in capital cases, citing two cases.

The difference between Wood's argument with respect to these prospective jurors and the prospective jurors who were struck because they said they did not believe in an eye for an eye is that the comparison with a white juror who was not struck was raised before the appellate court. In his appellate brief, Wood argued that if the state court were to compare Juror No. 20 and Juror No. 99, the court would see based on questionnaire forms that those prospective jurors also had relatives who had been prosecuted, but that those white jurors had not been stricken. Vol. 13 at page 20. Although this claim is therefore different from the claim the court has concluded is barred under the *Hightower* ruling, habeas relief is nevertheless due to be denied as to this claim.

The inquiry in a *Batson* claim has been described by the Supreme Court as follows:

On direct appeal in federal court, the credibility findings a trial court makes in a *Batson* inquiry are reviewed for clear error. *Hernandez v. New York*, 500 U.S. 352, 364-366, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (plurality opinion)

28

> (holding that evaluation of a prosecutor's credibility "lies 'peculiarly within a trial judge's province' "). Under AEDPA, however, a federal habeas court must find the state-court conclusion "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Thus, a federal habeas court can only grant Collins' petition if it was unreasonable to credit the prosecutor's race-neutral explanations for the *Batson* challenge. State-court factual findings, moreover, are presumed correct; the petitioner has the burden of rebutting the presumption by "clear and convincing evidence." § 2254(e)(1). *See Miller-El, supra,* at ----, 125 S.Ct., at 2325.

*Rice v. Collins*, __ U.S.__, 126 S. Ct. 969, 974 (2006).

The Eleventh Circuit has recently addressed a claim and has explained the role of the defendant in presenting comparative evidence in the context of a *Batson* claim.  In *Atwater v. Crosby*, 451 F.3d 799 (11th Cir. 2006), a defendant objected at trial to the state's use of a peremptory challenge to remove the only African American from the jury venire.  The state gave a reason for the strike as being the juror's reluctance, which the court accepted.  *Id.* at 805.  In his petition for habeas relief, the petitioner argued that the trial court's application of *Batson* was unreasonable because other non-African American jurors expressed reluctance to serve, so that a comparative juror analysis led to the conclusion that the African American was struck on the basis of race. *Id.* The Eleventh Circuit noted that the comparative juror argument was not made at the time the *Batson* challenge was made at the trial court.  *Id.* The Eleventh Circuit explained that at the third step of *Batson* analysis the persuasiveness of the prosecutor's justification for a peremptory strike is the critical issue, and the burden of persuasion regarding possible racial motivation "rests with, and never shifts from, the opponent of the strike."  *Id.* at 806 (*quoting Purkett v. Elem*, 514 U.S. 768 (1995)(per curiam)).  In the case before it, the Eleventh Circuit stated that the trial judge upheld the strike after agreeing that the potential juror had difficulty

with her response to the prosecution and that the "defendant failed to follow through, or come forward with any concrete pretext evidence or argument." *Id.* at 807.  The court noted that although the defendant "presented comparative evidence of discrimination to the post-conviction courts and in his petition for habeas relief, conspicuously absent from the trial record is some argument or evidence of comparability at the time that the *Batson* challenge was made to refute the prosecutor's reason for the strike." *Id.*  Without comparison evidence, the petitioner's *Batson* claim failed. *Id.*

This court finds that *Atwater* controls in this case.  The court has reviewed the transcript of the *Batson* challenge at the trial court, the articulated reasons, the defense's response, and the court's analysis. *See* Vol 2 at pages 356-392.  As reasons were articulated by the prosecutor, the trial court determined that they were race neutral.  The court finds no reference by defense counsel at the time the *Batson* challenge was made to any argument or evidence of comparability between the potential African American jurors who were struck and any white potential jurors who were not struck by the defense.  The court concludes pursuant to *Atwater*, therefore, that denial of his *Batson* claims was not an unreasonable application of federal law, or based on an unreasonable determination of the facts.

b.  Refusal to Remove Jurors for Cause

In Claim N, Wood states that venire members Betty Fowee, Johnny Leverett, James Jinright, Cary Maulden, and Glennie Helms said that they believed in an eye for an eye, and should have been removed for cause.  As stated above, this claim is procedurally defaulted and Wood has not established cause and prejudice for the default.

3.  Ineffective Assistance of Counsel at the Guilt Phase Claims

The Respondents contend that Wood identified fourteen ineffective assistance of counsel claims during the guilt phase.  The Respondent contends that in his brief in support of the merits of his claims Wood only points to evidence of a few instances of alleged ineffectiveness and has abandoned his fourteen claims.

Whether Wood's brief should properly be characterized as abandoning any claims or not, the court will only address the claims for ineffectiveness of counsel at the guilt phase to the extent that Wood himself has addressed them.  In his reply, Wood insists that no claim has been abandoned and that he has specifically pointed to evidence that counsel failed to adequately prepare for trial or investigate exculpatory evidence, that Wood's counsel made prejudicial remarks during voir dire, that counsel failed to adequately challenge various aspects of the State's case, and that counsel failed to move for disqualification of the judge.  The court will address each of these in turn.

Wood says that his counsel was inadequately prepared for the suppression hearing held in his case and so failed to present evidence that Wood was subjected to a custodial interrogation in a coercive environment, that he was intoxicated on the day of his arrest, and that he is mentally retarded and did not knowingly waive his rights.

The Rule 32 court determined that Wood did not carry his burden of proof on this claim because the evidence demonstrated that Wood made statements voluntarily without ever being questioned by authorities.  Vo. 24 at page 20.  The Alabama Court of Criminal Appeals affirmed this determination.  As will be discussed at greater length below, the court does not find this determination to be an unreasonable determination of facts.

Wood has also identified in his brief as being ineffective assistance of counsel his

counsel's remarks during voir dire that criminals sentenced to life without parole are released on parole and that Wood was guilty.

The Rule 32 court evaluated this claim and determined that it was reasonable for counsel to explore with jurors whether they did not believe life without parole meant life without parole, and that the jury would not have been swayed by an intimation that Wood was guilty when counsel spent the entire trial rejecting the argument by the State that Wood was guilty.  Vol. 24 at pages 23-24.  This court cannot conclude that that determination is an unreasonable application of federal law.

Wood also states that his counsel failed to object to hearsay testimony offered by the State's witnesses to burglary, and intentional murder, and failed to adequately examine those witnesses.   The Rule 32 court examined these claims.  As to the objection to hearsay by Ruth Gosha and Calvin Salter, the court concluded that reasonably competent counsel could have concluded that the command to stay away from the house was not an assertion offered to prove the truth.  The court also concluded that with regard to the alleged failure to object to hearsay by Ruth Gosha on the pages of the record which were cited, the record did not support Wood's argument because counsel did raise two objections, one of which was sustained and one of which was specifically made on hearsay grounds.  The Rule 32 court's determination was affirmed on appeal.  This court cannot conclude that the state courts' decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that it resulted in a decision that was based on an unreasonable determination  of the facts in light of the evidence presented in the state court proceeding.

Wood next argues that counsel failed to adequately investigate or present exculpatory

evidence to negate the intent element of murder, including evidence of intoxication and emotional stress and failure to request a jury instruction on intoxication.  The Rule 32 court determined that the choice to pursue a defense that the evidence was merely circumstantial evidence, rather than that the intent element should be negated, was a reasonable choice.  This court cannot conclude that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that it resulted in a decision that was based on an unreasonable determination    of the facts in light of the evidence presented in the state court proceeding.

Wood also challenges counsel's failure to object to aspects of the prosecutor's conduct, including misstating the definition of reasonable doubt, improperly raising the question of punishment during the guilt phase, swaying the jury by stating a personal opinion, arguing facts not in evidence, and wrongly suggesting that the murder was capital because the victim was sleeping.

As will be discussed more fully below, some aspects of this claim are not supported by the record.  The Rule 32 court stated that it must presume that counsel exercised sound professional judgment in choosing not to object, and also noted that the jury was repeatedly told that what the lawyers said was not evidence in the case.  This court cannot conclude that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Finally, Wood says that counsel was ineffective for failing to move for the

33

disqualification of Judge Barr on the grounds that he had prosecuted Mr. Wood on prior occasions in his capacity as District Attorney.  The Rule 32 court stated that recusal would not have been required under Alabama ethical rules, and that Wood failed to show that no competent attorney would have failed to move for recusal.  This court cannot conclude that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that it resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

      4.  Due Process Claim Based on Threats to Prosecute Expert

      Claim F asserts that Wood's due process rights to present defense witnesses on his own behalf were abridged by the State court's refusal to enjoin the Attorney General's threat to prosecute Wood's expert psychologist.

      The former Fifth Circuit has held in precedent binding on this court that "substantial government interference with a defense witness' free and unhampered choice to testify violated due process rights of the defendant." *United States v. Hammond*, 598 F.2d 1008, 1012 (5th Cir.1979).[6]

      There is no dispute in this case that Dr. Sultan, one of Wood's expert witnesses, was threatened with prosecution and her testimony was excluded at the initial Rule 32 evidentiary hearing.  The Alabama Court of Criminal Appeals, however, reversed the exclusion of the testimony.  The court stated that the "circuit court erred when it refused to allow Dr. Sultan to

---

     [6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

testify as an expert in this case on the grounds that she was not licensed to practice psychology in Alabama and that practicing psychology in Alabama without a license is a misdemeanor." *Wood v. State*, 891 So.2d 398, 410 (Ala. Crim. App. 2003).

Wood's attorney then mailed a request to the State asking for an agreement that the Attorney General's Office would not charge Dr. Sultan with a criminal offense if she testified at the evidentiary hearing after remand from the Alabama Court of Criminal Appeals or an explanation for any disagreement. Vol. 38 at pages 1911-12. Counsel for the State sent an e-mail to Wood's attorneys declining "to complete the document," but stating that the State intended to comply fully with the Alabama Court of Criminal Appeals' decision. *Id.* at page 1914.

At the August 4, 2003 remand hearing, counsel for Wood stated that Dr. Sultan would not be testifying because of the threat of prosecution, to which counsel for the State responded that the State had no intention of prosecuting Dr. Sultan, and that the State's earlier e-mail confirmed that the State would comply with the decision of the Alabama Court of Criminal Appeals. Vol. 28 at page 12.

In his Rule 32 appeal, Wood argued that his due process rights were violated by the threat to prosecute Dr. Sultan. The Alabama Court of Criminal Appeals stated as follows:

> The appellant further argues that, on remand, the State improperly refused to withdraw its threat to prosecute his expert if she testified during the evidentiary hearing. However, before the evidentiary hearing started, the State indicated that it did not have any intention of prosecuting the expert witness if she testified. Therefore, the record refutes the appellant's argument.

*Wood v. State*, 891 So.2d 398, 413 -414 (Ala. Crim. App. 2003).

Upon review of the record evidence of the chronology of events regarding Dr. Sultan, the court cannot conclude that the denial of this claim by the state court resulted in a decision that

was contrary to, or involved an unreasonable application of clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts in the light of evidence presented in the state court proceedings.

    5.  Constitutional Violation Based on Admission of Inadmissible Evidence

    Wood has argued that the allegedly inculpatory statement he made while in police custody was illegally obtained.  Wood argues that he was read his *Miranda* rights twice and both times refused to sign a written waiver of those rights.  Wood contends, therefore, that his statement while being transported from one police station to another that the police must think he is crazy, and his question of whether he looked like he would go into someone's house and shoot the person "in the head while they were asleep," was not voluntary.  Vol. I at pages 135-36. Wood argues that given evidence that he refused to sign a written waiver of his *Miranda* rights, it cannot be presumed that he waived his rights.

    The Alabama Court of Criminal Appeals, in reviewing this claim, noted that "testimony, during the suppression hearing and at trial, of Troy Police Officers Fannin and Donald Brown and the testimony at trial of Luverne Police Officer Wells established that the appellant had not yet been questioned when he made the statement. His statement was spontaneous and voluntary and therefore admissible."  *Wood v. State*, 715 So.2d 812, 819 (Ala. Crim.App. 1996).  Fannin was specifically asked in his testimony whether he asked Wood questions at the time of his initial arrest and Fannin testified, "I do not recall asking Mr. Wood any questions.  As I said, Mr. Wood was asking me questions, to which I would respond, we will discuss that when we get back to Troy."  Vol. 1 at page 142.

    Wood's argument is that it cannot be presumed that he waived his *Miranda* rights.  The

Alabama courts, however, relied on factual findings that he was not questioned by authorities, but that his statement was spontaneous and voluntary.  Accordingly, the court cannot conclude that the denial of this claim by the state courts resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts.

6.  Prosecutorial Misconduct

In Claim J, Wood contends that the prosecutor engaged in egregious misconduct during the guilt and penalty phases of his trial.  As stated above, Claims J(1)(b) and J(1)(d) are procedurally defaulted and Wood has not demonstrated cause and prejudice for the default.  The court will discuss the non-defaulted parts of claim J.

Prosecutorial misconduct which undermines the fairness and integrity of a trial can be so prejudicial to the accused that it rises to the level of a constitutional violation. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986).   In determining whether misconduct rises to the level of a constitutional violation, a reviewing court must decide whether there is a reasonable probability that, had the remarks not been made, the outcome would have been different.  *Brooks v. Kemp*, 762 F.2d 1383, 1402 (11th Cir. 1985).  "Of primary importance is the need to examine the entire context of the judicial proceeding." *Romine v. Head*, 253 F.3d 1349, 1369 (11th Cir. 2001)(citation omitted).

Wood argues that during the guilt phase of his trial, the prosecution misstated the legal definition of reasonable doubt and reduced the burden of proof.  Wood points specifically to comments by the prosecutor that a reasonable doubt is one for which a "substantial" reason is given and that reasonable doubt can be satisfied by common sense.  In support of this argument,

37

Wood cites to Supreme Court precedent discussing the burden of proof as defined in the charge to the jury. *See, e.g., Cage v. Louisiana*, 498 U.S. 39 (1990), *overruled on other grounds, Estelle v. McGuire*, 502 U.S. 62 (1991).

There is no claim that the jury was improperly instructed by the judge on the applicable burden of proof.  Wood's challenge is to the prosecutor's statement of the law in argument. There was an appropriate instruction on the burden of proof given by the court, Vol. 5 at page 943, and a charge was given to the jury that it was the role of the court to charge them on the applicable law. *Id.* at page 938.  This court cannot conclude that there is a reasonable probability that, had the remarks of the prosecutor not been made, the outcome would have been different.

Wood also contends that the prosecutor improperly injected his own opinion in the closing argument in Claim J(1)(c).  Wood points to comments by the prosecutor in which he referred to the first person.

An argument that invites the jury to rely on the expertise of the prosecutor instead of exercising fully its own discretion to choose punishment has been held to be improper.  *Drake v. Kemp,* 762 F.2d 1449, 1459 (11th Cir. 1985).

The Respondents contend that there was no improper argument based on the prosecutor injecting his own opinion. The Respondents argue that Wood has taken the prosecutor's comment out of context.

Wood has pointed to a portion of the prosecutor's argument in which he stated "In this case I am convinced from my common sense and my evidence that a burglary occurred, as it defined in Alabama law, that an intentional murder occurred, as it is defined in Alabama law, and that he did it . . . ."  Vol. 5 at 876.  That sentence, however, continues as follows:  "and I ask you

38

to say there is the line and by george I am going to do my duty as a citizen of this country, and this State, and this county, and this jury, and I am going to do my duty . . . ."  Furthermore,  the statement quoted by Wood is preceded by "I submit to you that you are the line in the dirt to say, in this case, the line is drawn."  *Id.*[7]

This court agrees that a fair reading of the prosecutor's statement, and the one the Alabama Supreme Court presumably found did not present plain error, *Wood*, 715 So. 2d at 821-22, is that in referring to "I am convinced" the prosecutor was speaking in the first person not to express his opinion, but to urge the jury to express that opinion for themselves.  Therefore, this court concludes that these comments were not improper by the prosecutor.  Even considering these comments, however, along with other evidence of the prosecutor's comments which have been identified by Wood, including comments contained in defaulted claims, the court cannot conclude the denial of this claim by the state courts resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, or resulted in a decision that was based on an unreasonable determination of the facts.

Wood's claim of prosecutorial misconduct during the penalty phase in Claim J(2) is that

---

[7] The full section reads as follows:
I submit to you that you are the line in the dirt to say, in this case, the line is drawn. In this case I am convinced from my common sense and my evidence that a burglary occurred, as it defined in Alabama law, that an intentional murder occurred, as it is defined in Alabama law, and that he did it, that both of those elements and all of those elements have been found beyond a reasonable doubt and proven, and I ask you to say there is the line and by george I am going to do my duty as a citizen of this country, and this State, and this county, and this jury, and I am going to do my duty, and I am going to have the courage to say I am going to cast a vote and lawlessness is going to stop in this case right here.

Vol. 5 at pages 876-77.

the prosecutor misled the jury about mitigating evidence.[8]

Proper prosecutorial argument is not unconstitutional, and even improper statements will not warrant habeas relief unless they render the sentencing proceeding fundamentally unfair. *See Williams v. Kemp*, 846 F.2d 1276, 1283 (11th Cir.1988)(when making fundamental unfairness determination, court "ask[s] whether there is a 'reasonable probability' that, but for the prosecutor's offending remarks, the outcome of the sentencing hearing would have been different"), *cert. denied*, 494 U.S. 1090 (1990).

Wood contends that the prosecutor's argument that Wood's counsel's mitigating circumstances argument was merely an after-the-fact excuse, attempted to decrease the importance of the mitigating factors, and thereby misstated the law on mitigation. The Respondents argue that the prosecutor was not making an improper argument because it is appropriate for a prosecutor to attempt to refute mitigating circumstances and to comment on "the weight to be accorded the evidence of mitigating circumstances," citing *Burgess v. State* 827 So.2d 134, 164 (Ala. Crim. App. 1998). Also, the transcript reveals that the court instructed the jury on how to weigh aggravating and mitigating circumstances. Vol. 6 at pages 1078-79.

The court cannot conclude that the decision of the state courts was contrary to or involved an unreasonable application of clearly established law or that the decision of that court was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

7. Burglary Statute is Unconstitutionally Vague

_____

[8] Although the heading of this claim includes allegations that the prosecutor argued future dangerousness and used inflammatory language, no argument to that effect has been made, nor any citation to the record made to support such an argument.

As discussed above, this claim is procedurally defaulted and Wood has failed to establish cause and prejudice for the default.

8.  Due Process Claim Based on Inadequate Notice of an Aggravating Circumstance

In Claim M, Wood argues that on September 22, 1994, the State gave notice of the intention to rely on three aggravating circumstances at the sentencing phase of the trial, including that the crime was committed while Wood was under a sentence of imprisonment, that the crime was committed during the course of a burglary, and that the crime was heinous, atrocious or cruel, but that on October 21, 1994, the first day of the sentencing phase, the State was allowed to announce and prove a separate additional aggravating circumstance.  Wood contends that this was late and inadequate notice of the new circumstance.  As discussed above, this claim is procedurally defaulted and Wood has not established cause and prejudice for the default.

9.  Ineffective Assistance of Counsel at the Penalty Phase Claims

a.  Ineffective Assistance of Counsel Claim Based on Counsel's Inexperience

Wood argues that his appointed trial counsel was per se ineffective at the penalty phase of his trial because of his inexperience. This claim is procedurally defaulted, as discussed above, with no showing of cause and prejudice to excuse the default.

b.  Ineffectiveness for Failing to Request a Jury Instruction on Mental Retardation

Wood has cited to *Penry v. Johnson*, 532 U.S. 782 (2001), arguing that trial counsel was ineffective for failing to request a jury instruction that mental retardation could be considered as a mitigating factor at the penalty phase.  Wood argues that the instruction which was given to the jury, that it could consider the defendant's mental or emotional disturbance was insufficient and rendered meaningless by the lack of evidence on that point at trial.

41

The Respondent relies on the Rule 32 and Alabama Court of Criminal Appeals' rejection of this claim.  Those courts determined that there was no evidence of mental retardation presented to the jury, so it was not ineffective to fail to request an instruction on mental retardation.

To the extent that this claim is an extension of the claim that counsel was ineffective for failing to present evidence of mental retardation, it will be resolved by the next section of this Memorandum Opinion.  To the extent that it states a separate claim, that counsel was ineffective for failing to request a jury instruction on consideration of mental retardation even when there was no evidence presented to the jury on that issue, the state courts' rejection of that separate claim is not an unreasonable application of federal law.

c.  Trial Counsel's Failure to Investigate and Present Mitigation Evidence

Finally, the court addresses the issue which it finds to have merit and which entitles Wood to habeas relief.

The primary focus here is Wood's claim that there was mitigating evidence which could have been presented to the jury during the penalty phase of his case, but which was not presented because of the ineffective assistance he received from his counsel.  This claim covers many different categories of evidence which have been broken down into sub-claims in the Joint Report filed in this case.  Wood also argues that despite the fact that the existence of this evidence was made clear during post-conviction proceedings, the state courts ignored the evidence and adopted without consideration findings of fact and conclusions of law drafted by the counsel for the State.  Wood contends that the State court decisions denying his claim are contrary to, and involve and unreasonable application of, *Strickland v. Washington*, 466 U.S.

42

668, 687 (1984) and *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003).[9]

To establish a claim for ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient, falling below an objective standard of reasonableness, and that the deficiency prejudiced the defense. *Strickland*, 466 U.S. at 688. Under *Strickland*, trial counsel has a duty to make reasonable investigations or to make a reasonable decision that particular investigations are unnecessary. *Strickland*, 466 U.S. at 691.

Wood argues that counsel failed to present evidence of his mental retardation, his abusive childhood, and his poverty which should have been presented to the jury. The court notes that this is not a case, such as the *Brownlee v. Haley,* 306 F.3d 1043, 1070 (11th Cir. 2002) decision cited by Wood, in which counsel failed to investigate, obtain, or present *any* mitigating evidence to the sentencing jury. Instead, this is a case in which at least some evidence was investigated and presented. For instance, as outlined above in connection with evidentiary hearing issues, Wood's counsel presented evidence about his poverty and childhood during the penalty phase of his trial. The court cannot conclude, therefore, that claims based on failure to further investigate or present evidence based on these identified issues rose to the level of ineffective assistance of counsel under *Strickland*. Therefore, Wood is not entitled to relief on the majority of the claims asserted as ineffective assistance of counsel claims in Claim A of the Joint Report.

---

[9] *Wiggins* is distinguishable as it involved a case where counsel purportedly made a decision to focus on denying direct responsibility for a murder, requested bifurcated sentencing, and when bifurcated sentencing was denied, focused on direct responsibility for the murder, and failed to investigate and present available mitigating evidence about the petitioner's background. *Wiggins,* 539 U.S. at 538. Instead of focusing on *Wiggins*, the court will do as the Eleventh Circuit instructs and apply "the controlling Supreme Court precedent with regard to claims of ineffective assistance of counsel [which] is *Strickland*." *Williams v. Allen*, 458 F.3d 1233, 1244 (11th Cir. 2006).

Claim A(1)(e), however, is a claim that trial counsel was ineffective for failing to investigate and present evidence of Wood's mental retardation and mental disability.  There was no evidence presented to the sentencing jury about Wood's intellectual functioning.  Such evidence existed.  For instance, at the Rule 32 hearing, Janet Penn testified that Wood was in her special education class for two years.  Vol. 17 at page 212.  She explained that students are placed in special education based on i.q. scores. *Id.*  She also testified that she was not contacted before Wood's trial and that if she had been asked, she would have testified on his behalf.  *Id.* at 215.  At the Rule 32 hearing, Alfreida Griffen, who knew Wood during childhood testified about Wood's experiences in special education.  <u>See</u> Vol. 16 at pages 132-133.

Of even greater significance, Wood's three trial counsel had in their possession an expert report which put them on notice that Wood had at least some deficiency in his intellectual functioning.  Prior to trial, counsel moved for a psychological evaluation of Wood because they were concerned about his competency to stand trial and his mental state.  Vol. 7 at pages 216-18. Dr. Karl Kirkland evaluated Wood and prepared a report.  The report states that Wood "is functioning, at most, in the borderline range of intellectual functioning."  Vol. 7 at page 243. The report further states that "he produced an IQ in the borderline range of intellectual functioning," *id.* at 242-43, and that "he could not use abstraction skills much beyond the low average range of intellect."  *Id.* at 243.  Finally, the report states that Wood reads on a third grade level. *Id.*

Wood says that his counsel met with potential witnesses for the penalty phase at the courthouse during the trial and at no other time, that the investigator hired did not interview family members about mitigating circumstances, that counsel did not contact Wood's teachers,

and did not seek further professional evaluation of Wood.  Wood argues that the failure to

contact his teachers and to seek further testing was unreasonable in light of the report from Dr.

Kirkland which said Wood was functioning in the borderline range of intellectual functioning.

Vol. 7 at page 243.

      The Respondents argue that the state courts correctly determined that Wood failed to

establish deficient performance.  The Respondents point out that counsel moved for a

psychological evaluation of Wood because they were concerned about his competency to stand

trial and his mental state.  Vol. 7 at pages 216-18.  The Respondents state that there is nothing in

the evaluative report by Dr. Kirkland which suggests that Wood is mentally retarded.  The

Respondents state that Dr. Kirkland's report states that Wood is at least in the borderline range of

intellectual functioning, which, according to the Respondents, suggests that Wood's intellectual

functioning could be above the borderline range.  As noted above, however, the report also states

that "he is functioning, at most, in the borderline range of intellectual functioning,"  Vol. 7 at

page 243, and that  "he produced an IQ in the borderline range of intellectual functioning," *id.* at

242-43.

      The Alabama Court of Criminal Appeals adopted the Rule 32 court's findings that

Wood's counsel

> attempted to get information from Wood's schools. In that regard, counsel
> contacted individuals at Luverne High School. The testimony at the evidentiary
> hearing also shows that trial counsel sought information from the Alabama
> Department of Pardons and Paroles, the Alabama Department of Corrections, and
> the Department of Human Resources. In addition, trial counsel sought guidance
> from the Capital Resource Center and the Southern Poverty Law Center.

*Wood v. State,*  891 So.2d 398, 418 (Ala. Crim. App. 2003).  The state courts also determined

that the decision not to seek further evaluation of Wood was reasonable.  The Rule 32 count relied on a presumption that sound professional judgment was exercised by Wood's counsel not to pursue further testing based on Dr. Kirkland's report, Vol. 41 at page 2441, and that the decision by Mr. Dozier and Mr. Ralph, two of Wood's counsel, not to raise mental retardation is subject to deference. *Id.* at page 2442.

The scope of the investigation of mitigating evidence in this case, specifically evidence of mental retardation, must be evaluated within the context in which it arose.  Lawyers appointed to represent defendants in capital murder cases in Alabama must have five years' experience.  Two of Wood's attorneys had the requisite years of experience, while one of the attorneys, Charles Trotter, had less than one year.  Trotter was appointed to assist the other attorneys.

Frank Ralph, one of the attorneys representing Wood, testified at the Rule 32 hearing that he did not participate in the investigation of evidence to be used in the penalty phase, that he reviewed reports of the investigator who had been hired, and that he did not meet with any witnesses for the penalty phase. Vol. 16 at page 73.  The other attorney, Cary Dozier, explained his own role in investigating mitigating circumstances as follows: "We went over the motions with Mr. Trotter; of course, psychological evaluations and things that we felt were necessary at the sentencing stage." *Id.* at page 16.

Ralph and Dozier assigned Trotter to the sentencing phase of the trial.  As Trotter explained at the Rule 32 hearing, the nature of his representation of Wood changed shortly before trial when the decision was made that he would represent Wood during the penalty phase.  Vol. 17 at page 27.  According to Dozier, he and Ralph, "just basically designated Trotter to do the sentencing aspect of it."  Vol. 16 at page 15.  Trotter further stated at the Rule 32 hearing that he

46

objected to the other two attorneys because he did not think they were prepared to move forward with the penalty phase.  Vol. 17 at page 28-9.   Trotter described his efforts at investigating mitigating evidence as being that he spoke to members of Wood's family at the courthouse and "based on that is how I identified the witnesses that we used at the penalty phase."  *Id.* at page 36.

When asked at the Rule 32 hearing whether he saw any mention of mental retardation in Dr. Kirkland's report, Wood's trial counsel, Trotter, stated that he saw references to "borderline range of intellectual functioning."  Vol. 17 at page 72.  Trotter testified at the Rule 32 hearing, however, that he did not recall considering "borderline range of intellectual functioning" at the time of trial and did not "recall anything about that . . . ."  *Id.* at page 51.  He also testified that Dozier told him he did not think there was anything in the Kirkland report that merited further evaluation.  *Id.* at page 45.

Trotter also testified at the Rule 32 hearing that he attempted to subpoena Wood's school records and that he called Luverne High School.  Vol..17 at page 23. He did not, however, recall speaking to any teachers at Luverne High School or whether he talked to Wood about who his teachers were.  *Id.* at 22-23.  He stated that he did not receive cooperation from the school and subpoenaed school records, but that the school did not respond to the subpoena. *Id.* At one point, Trotter wrote to Kevin Doyle of the Southern Poverty Law Center that he had been "stressed out over this case and don't have anyone with whom to discuss the case, including the two other attorneys."  Vol. 18 at page 31.

Before the penalty phase of the trial began, Trotter told the judge that before final sentencing by the court they would request further psychological evaluation be done, although

47

they would not be able to "introduce that report today to the jury . . . ."  Vol. 5 at page 967.

Ralph testified that he did not think Trotter brought out enough of Wood's background during the sentencing hearing.  Vol. 16 at page 80.  Ralph did not engage in additional questioning of witnesses at the penalty phase, however.

Strategic choices made "after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. *Strickland*, 466 U.S. at 690-91.  Although the state courts applied a presumption that a strategic decision was made not to pursue and present evidence of mental retardation, the clear and convincing record evidence indicates that Trotter, who did not have the requisite years of experience, was left to conduct the mitigating evidence investigation on his own with little assistance from the attorneys who had the requisite experience, and did not make a strategic decision not to pursue or present evidence of mental retardation.  The decision Trotter did make with regard to further testing was that additional psychological testing should be done, although he did not request a continuance, and instead informed the judge before sentencing that a report of such evaluation would not be presented to the jury, but to the court at a later date.  Vol. 5 at page 967.   In fact, during the sentencing hearing before the trial judge, but not the jury, Trotter referred to the psychological report of Dr. Kirkland and stated "Holly cannot use abstraction skills much beyond the low average range of intellect, and that he is at most functioning in the borderline range of intellectual functioning . . . ."  Vol. 6 at page 1108.  Counsel, therefore, recognized, at least in part, the significance of the evidence, but failed to present it to the

sentencing jury.[10]  This court finds nothing in the record to even remotely support a finding that

counsel made a strategic decision not to let the jury at the penalty stage know about Wood's

mental condition.  A finding by the state courts that a strategic decision was made not to

investigate or introduce to the sentencing jury evidence of mental retardation is an unreasonable

determination of the facts in light of the clear and convincing evidence presented in the record.

The unreasonableness of counsel's failure to investigate and present evidence of Wood's

intellectual functioning in the penalty phase is highlighted by the Eleventh Circuit's decision in

*Stephens v. Kemp*, 846 F.2d 642 (11th Cir. 1988).  In *Stephens*, the trial court ordered a

psychiatrist who examined the appellant to file a written report concerning his competency to

stand trial and his degree of criminal responsibility for his acts.  *Id.* at 653.  The report found the

defendant to be competent to stand trial and found no reduced capacity by reason of mental

defect.  *Id.*  The court found that not investigating the defendant's previous mental illness was

not ineffective for the guilt-innocence stage.  *Id.*  The court did determine, however, that

counsel's assistance was ineffective for purposes of the penalty phase.  *Id.*  The court reasoned

that although trial counsel was aware in advance of trial that the defendant had spent at least a

brief period of time in a mental hospital and a psychiatric evaluation been ordered, counsel

ignored the possible ramifications of those facts as regards the sentencing proceeding.  *Id.*

The Eleventh Circuit has characterized the *Stephens* decision in the following manner:

In *Stephens*, this Court found that an attorney who made no use in the penalty

---

[10] The reference to Wood's intellectual functioning was too little, too late.  As the
Eleventh Circuit has explained, the role of the sentencing "jury is too important, and the right to
introduce all mitigating evidence is too essential, to permit a judge to correct so egregious a
failure by counsel to investigate, obtain, or present powerful mitigating evidence to the
sentencing jury." *Brownlee v. Haley,* 306 F.3d 1043, 1079 (11th Cir. 2002).

phase of the trial of records of the defendant's mental illness, did not procure an independent expert analysis of the defendant, and did not comment in closing argument upon the records or the defendant's mother's testimony regarding the manifestations of the defendant's mental illness, was not within "the wide range of professionally competent assistance."

*Holladay v. Haley,* 209 F.3d 1243, 1248 (11th Cir. 2000) (citation omitted).

In this case, the attorneys for Wood had in their possession a report which was conducted for purposes of determining competency to stand trial and presence of mental illness, but which stated within it that Wood was in the borderline range of intellectual functioning.[11]  For purposes of the guilt phase, additional investigation may not have been required, but failure to inquire of Wood's teachers about his educational background or to seek further evaluation, based on Dr. Kirkland's report, for purposes of the penalty phase, was ineffective assistance of counsel.  Even if no further investigation had occurred, counsel should have at least put before the jury evidence that Wood was functioning in "borderline range of intellectual functioning," as identified in the expert report.  Failure to do so was not within the wide range of professional competent assistance, and the state courts' decision to the contrary is an unreasonable application of *Strickland*.

The next question before the court is whether the ineffective assistance of Wood's three counsel at the penalty phase prejudiced him.  A court can find prejudice only if counsel's errors "undermine confidence in the outcome" of the proceeding.  *Strickland,* 466 U.S. at 694. That standard is met if the petitioner can "show that there is a reasonable probability that . . . the result

_____

[11] Because the evaluation which had been done of Wood indicated that he had some deficits in intellectual functioning, this case is to be distinguished from *Osborne v. Terry*, No. 04-16751 (11th Cir. October 16, 2006), in which counsel had a report but there was no indication that additional evaluation was required.

50

of the proceeding would have been different" without the "unprofessional errors." *Id.*  In the

context of a *Strickland* claim regarding the failure to present mitigating evidence, a court must

conclude that "but for counsel's unprofessional errors, there is a reasonable probability that the

sentencer would have weighed the balance of aggravating and mitigating factors to find that the

circumstances did not warrant the death penalty." *Brownlee v. Haley,* 306 F.3d 1043, 1069 (11th

Cir. 2002) (citations omitted).

      In this case, the jury was never presented with evidence that Wood had any deficiency in

his intellectual functioning.  The jury recommendation of the death sentence was made on a 10 to

2 vote, which is the minimum required to recommend a sentence of death. *Ala.Code* § 13A-5-46.

The aggravating circumstances identified in Wood's case were that a capital offense was

committed by a person under a sentence of imprisonment; that the defendant had not been

previously convicted of another capital offense, but had been previously convicted of one felony

involving the use of violence to the person; and that the capital offense was committed while the

defendant was engaged in the commission of, or an attempt to commit, or flight after committing

burglary or specifically burglary in the first degree.  Vol. 6 at page 1123-1124.

      Although this case is not exactly the same as the Eleventh Circuit's *Brownlee v. Haley,*

306 F.3d 1043 (11th Cir. 2002) decision, because no mitigating evidence at all was presented in

*Brownlee*, the court finds that the reasoning of *Brownlee* is helpful in evaluating the question of

prejudice in this case where no evidence of intellectual functioning was offered in mitigation.  In

*Brownlee* the court explained that there was a reasonable probability that a jury would have

found a non-statutory mitigating circumstance to exist in the case, based on evidence of

"borderline intellectual functioning." *Id.* at 1072-73.  The court explained the significant of

evidence of intellectual limitation as follows:

> Evidence of Brownlee's severe intellectual limitations is particularly significant in light of the United States Supreme Court's recent holding in *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002), that the Eighth Amendment categorically prohibits the execution of mentally retarded individuals. As the Supreme Court explained, mental retardation is generally defined as having an IQ below 70, *see id.* at ---- n. 5, 122 S.Ct. at 2245 n. 5, accompanied by "significant limitations in adaptive skills such as communication, self-care, and self-direction that become manifest before age 18," id. at ----, 122 S.Ct. at 2250. An individual who is mentally retarded has a "diminished capacit[y] to understand and process information, to communicate, to abstract from mistakes and learn from experience, to engage in logical reasoning, to control impulses, and to understand the reactions of others." *Id.* (footnote omitted).
>
> * * *
>
> In this case, Brownlee's trial lawyers had their client examined by only one clinical psychologist. This examination took place only after the trial judge suggested that counsel contact Dr. Beidleman, and, notably, only after the jury phase of the sentencing process was completed. Based on Dr. Beidleman's testimony alone, which included evidence that Brownlee's IQ was "in the range of 67, 68, 75," there is a reasonable probability that the jury would have found that Brownlee suffered from mild or borderline mental retardation, or that a non-statutory mitigating circumstance existed. Indeed, it is abundantly clear that an individual "right on the edge" of mental retardation suffers some of the same limitations of reasoning, understanding, and impulse control as those described by the Supreme Court in *Atkins*. Counsel's failure to investigate this issue at all or to present any of this evidence seriously undermines our confidence in the application of the death sentence.

*Brownlee v. Haley*, 306 F.3d 1043, 1072 -1073 (11th Cir. 2002).

This court is mindful of Judge Edmonson's concurring opinion in *Brownlee*, which states as follows: "I also stress that I doubt-and do not understand today's opinion to say-that the failure to introduce evidence of mild or borderline mental retardation in a capital sentencing proceeding will be, or almost always will be, or even usually will be enough to satisfy the prejudice element of *Strickland*." *Brownlee v. Haley,* 306 F.3d 1043, 1080 (11th Cir. 2002) (Edmonson, J.,

concurring).  While the *Brownlee* decision does not hold that failure to present evidence of borderline mental retardation is prejudicial in every case, the court finds the reasoning of *Brownlee* to be applicable in this case.  The evidence of Wood's intellectual functioning, even though not sufficient to establish all of the requirements for a finding of mental retardation, was not refuted as to the facts that Wood has an i.q. and functional academic functioning which meet the definition of mental retardation, the aggravating circumstances relied on in sentencing Wood to death were largely based on criminal history, and the vote to recommend a sentence of death was the minimum required under Alabama law.

Under the reasoning of *Brownlee*, there is a reasonable probability that evidence of Wood's intellectual functioning, even if it had not been enough to establish that he was mentally retarded and had merely demonstrated that he was on the borderline of mental retardation, would have established a non-statutory mitigating circumstance.  Counsel's failure to investigate and present any evidence of intellectual functioning, therefore, is sufficient to undermine confidence in the application of the death sentence.  The state courts' rejection of the ineffective assistance of counsel at the penalty phase claim was an unreasonable application of federal law under *Strickland*.  Accordingly, the court concludes that Wood is entitled to habeas corpus relief on his claim of ineffective assistance of counsel in the penalty phase based on his counsel's failure to investigate and present mitigating evidence regarding mental retardation and mental disability.

## V.  <u>CONCLUSION</u>

For the reasons discussed, it is hereby ORDERED as follows:

1.  The Petition for Writ of Habeas Corpus is conditionally GRANTED as to Claim

A(1)(e) that Trial Counsel Was Ineffective for Failing to Investigate and Present Evidence of Mr. Wood's Mental Retardation and Mental Disability.  The State of Alabama has 90 days from the date of this judgment to either (1) vacate Holly Wood's sentence and resentence him to life without possibility of parole, or (2) conduct a new sentencing hearing for Holly Wood that is consistent with the requirements of *Strickland v. Washington*, 466 U.S. 684 (1984).

2.  The Petition for Writ of Habeas Corpus is DENIED in all other respects.

A Final Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 20th day of November, 2006.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE